UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


RICHARD D. GRIMES,           )
           )
        Plaintiff,        )
           )
        v.           )     No.  4:07CV1272 SNLJ
           )          (TIA)
MICHAEL ASTRUE, Commissioner     )
of Social Security,          )
           )
        Defendant.     )


## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration.  All
pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28
U.S.C. § 636(b) for appropriate disposition.

## I.    Procedural History

On August 1, 2005, Claimant filed an application for Disability Insurance Benefits
pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 50-54).[1]  In the
Disability Report Adult completed by Claimant and filed in conjunction with the application,
Claimant stated that his disability began on May 17, 2005, due to back injury.  (Tr. 101-08).  On
initial consideration, the Social Security Administration denied Claimant's claims for benefits.  (Tr.
39-43).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 38).
On November 16, 2006, a hearing was held before an ALJ.  (Tr. 242-69).  Claimant testified and

---

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer
(Docket No. 9/filed November 16, 2007).

was represented by counsel.  (Id.).  Vocational Expert Jeffrey F. Magrowski, Ph.D., a certified

rehabilitation counselor, also testified at the hearing.  (Tr. 29-31, 262-68).  Thereafter, on

December 20, 2006, the ALJ issued a decision denying Claimant's claims for benefits.  (Tr. 9-18).

After considering Dr. Knapp's records and Delores Gonzalez's reports, the Appeals Council

found no basis for changing the ALJ's decision and denied Claimant's request for review of the

ALJ's decision on May 11, 2007.  (Tr. 2-5, 196-206, 207-18, 219-41).[2]  The ALJ's determination

thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on November 16, 2006

#### 1.  Claimant's Testimony

At the hearing on November 16, 2006, Claimant testified in response to questions posed

by the ALJ and counsel.  (Tr. 242-62).  At the time of the hearing, Claimant was fifty years of age

and his date of birth is January 29, 1956.  (Tr. 245).  Claimant is married and lives with his wife,

two-year old daughter, and his mother.  (Tr. 246).  Claimant has a drivers license and drives twice

a week to the store.  Claimant graduated from high school.  (Tr. 246).  Claimant served in the

United States Marine Corps as a combat engineer and was honorably discharged.  (Tr. 250-51).

Claimant weighed 215 pounds and stands at 6' and is right handed. (Tr. 251).

Claimant testified that he last worked on May 17, 2005, operating a hostler for Terminal

Rail, Union Pacific Railroad.  (Tr. 247, 261).  Claimant worked in that capacity for twenty-seven

---

[2]The undersigned interprets the Appeals Council's statement that the additional evidence did
not provide a basis for changing the ALJ's decision a finding that the submission of the additional
medical records was not material.  See Bergmann v. Apfel, 207 F.3d 1065, 1069-70 (8th Cir.
2000) (whether additional evidence meets criteria is question of law; to be material, evidence must
be relevant to claimant's condition for time period for which benefits were denied, and must not
merely detail after-acquired conditions or post-decision deterioration of pre-existing condition).

years. (Tr. 248). Claimant stopped working after being hit with a set of tannums from a chassis. (Tr. 248). Claimant's Worker's Compensation claim was resolved three months earlier, and he received $90,000. (Tr. 248-49). Claimant testified that he cannot work, because the pain in his lower back makes him unable to sit too long, stand, or bend. (Tr. 249).

Claimant testified that his physical impairments include trouble with the upper part of his neck and the medications he takes. (Tr. 249). His medications, especially Vicodin and the muscles relaxers, interfere with his ability to focus and make him drowsy. (Tr. 249-50). Although he has discussed the side effects he experiences from his medications, his doctors have not adjusted the dosages or altered his medications. (Tr. 250). Before the accident in 2005, Claimed had orthoscopic surgery to repair a bulged disc. (Tr. 251). Claimant testified that he has lower back pain most of the time around the level of a seven. (Tr. 251-52). His back pain can be triggered by either sitting or standing too long. (Tr. 252). To relieve the pain, Claimant reclines in his easy chair for a couple of hours and takes medications, first Vicodin and then Flexeril. (Tr. 252). Since the accident in 2005, Claimant underwent physical therapy and injections but the injections did not provide pain relief. (Tr. 253). Dr. Knapp is Claimant's treating physician, and he prescribes pain medications on an ongoing basis. Claimant testified that he has been told by doctors there is no other surgical procedure available to him for his lower back pain. (Tr. 253).

Claimant experiences stiffness in his neck three times a week caused by moving his neck in the wrong way. (Tr. 253-54). Claimant has been treated with a series of two injections by Dr. Hurford. (Tr. 254-55).

Claimant testified that he can sit or stand in one place for forty-five minutes to an hour on a good day and fifteen minutes on a bad day. (Tr. 255). Claimant can lift a gallon of milk. (Tr.

255).  Claimant can walk a half a block.  (Tr. 256).  Claimant testified that his doctor advised him to walk and his physical therapist gave him home exercises such as stretching.  Claimant can bend over but needs assistance getting back up.  Claimant testified that he experiences pain when stooping.  (Tr. 256).  Claimant testified that he does not reach over his head but he can reach out. (Tr. 257).  Claimant walks slowly up and down the steps in his house.  (Tr. 257).

As to his daily activities, Claimant takes his medicine in the morning, helps feed his daughter, watches the morning news, and reads the newspaper.  (Tr. 257).  Claimant wakes up during the night two to three times.  Claimant can dress on his own.  (Tr. 257).  Once in a while, Claimant cooks and tries to do a little yard work for twenty minutes at a time.  (Tr. 258). Claimant takes two naps each day for about an hour as a side effect of his medications.  (Tr. 258-59).   His mother and wife do the chores around the house including cooking dinner.  (Tr. 258-59).  Claimant watches television at night and socializes with his neighbors a couple of times a week.  (Tr. 259).  After last fishing five months earlier, Claimant had problems for the next two days.  (Tr. 259-60).  On occasion, Claimant fishes in the pond behind his house.  (Tr. 260). Claimant belongs to the Elks Lodge but has not been to the lodge for four to five months. Claimant takes his daughter to church on holidays.  Once a month he visits relatives.  (Tr. 260). Claimant smokes a pack of cigarettes each day and occasionally drinks a beer.  (Tr. 262).

## 2.  Testimony of Vocational Expert[3]

---

[3]Claimant's contention set forth in section IV of his brief is without merit and disingenuous. Claimant argues that the ALJ failed to consider the report of Certified Rehabilitation Counselor Delores Gonzalez when formulating the RFC.  The record reflects that the report in question was not made available to the ALJ before issuing his decision on December 20, 2006.  Claimant

Vocational Expert Jeffrey F. Magrowski, Ph.D., a certified rehabilitation counselor, classified Claimant's past relevant work as a crane operator, a job typically skilled and light in exertion as performed in the national economy. (Tr. 262-63). Dr. Magrowski described the hostling tractor to be similar to a large forklift and determined the job's classification based on a forklift driver because the hostling tractor job is not in the DOT. (Tr. 263). Dr. Magrowski classified the job as being medium and at least semi-skilled, SVP of 4. When working on the ground, Dr. Magrowski found the job to be more like a laboring job, medium to heavy and unskilled, SVP of 2. (Tr. 263). Dr. Magrowski testified that either the skilled or the semi-skilled jobs would provide some skills that would be transferable to a different exertional category, a light category such as driving or machine operating. (Tr. 263-64).

The ALJ asked Dr. Magrowski to assume that

> [i]f you would assume a hypothetical individual able to occasionally lift and carry 20 pounds, frequently 10 pounds, who could stand and/or walk with normal breaks for about 6 hours in an 8 hour work day, sit with normal breaks for about 6 hours in an 8 hour work day. Push and/or pull, including operation of hand and/or foot controls would be unlimited. Worker could engage in no more than occasional climbing ladders, ropes or scaffolds, stooping or crouching. Should avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights. If you were to consider that residual functional capacity, would any of the past work that you've indicated be possible?

(Tr. 264). Dr. Magrowski opined that such an individual would not be able to work any of the

submitted the record at issue to the Appeals Council after the ALJ issued his decision. Further, on two occasions during the hearing, counsel was given the opportunity to request the ALJ to keep the record open in order to submit additional records, but he did not make such a request. At the beginning of the hearing on November 16, 2006, the ALJ asked counsel and Claimant whether there were any preliminary matters to address. (Tr. 245). At the end of the hearing, the ALJ specifically inquired into the need to keep the record open and counsel declined. (Tr. 268). Accordingly, the ALJ found "that the record is full and complete. I'll close the record and close the hearing." (Tr. 269). Indeed, the record shows that Claimant underwent the vocational rehabilitation evaluation on November 20, 2006, four days after the hearing, and that the counselor issued her report on December 1, 2006. (Tr. 207).

past work.  (Tr. 264).

Next, the ALJ asked whether "an individual having that residual functional capacity, with vocational capabilities the same as this Claimant, including age, education, work experience have the ability to adjust to and perform any other types of work?"  (Tr. 264).  Dr. Magrowski testified that he believed such individual could work but that he would have to look more at unskilled work.  Dr. Magrowski noted that there are in excess of 1, 200 of those jobs in the State and over 100,000 in the national economy.  Some examples of such jobs would be a game or arcade attendant with over 2,000 jobs in the State and in excess of 200,000 in the national economy and some assembly or bench work with over 3,000 jobs in the State and over 300,000 in the national economy.  (Tr. 264).

The ALJ asked if there would be any skilled or semi-skilled jobs that would be possible for an individual to perform with a RFC as indicated.  (Tr. 265).  Dr. Magrowski noted that the machine operating and the driving skills could not be transferred because of the limitation on hazards.  (Tr. 265).

For the second hypothetical, the ALJ asked Dr. Magrowski to assume that

[a] worker who would be restricted to no lifting or pushing or pulling weights
greater than 40 pounds, no repetitive bending, stooping or twisting.  If you were to
consider those factors, would any of the past work be possible?

(Tr. 265).  Dr. Magrowski opined that such individual could do the operating of the crane.  (Tr. 265).

For the third hypothetical, the ALJ asked Dr. Magrowski to assume that

[t]he factors from the second, with the additional restrictions of no more than
occasional climbing, stooping, or crouching, or overhead reaching, would that
allow the performance of the past work?

(Tr. 265).  Dr. Magrowski responded no.  (Tr. 265).

In response to counsel's question regarding whether the parking lot attendant, the arcade attendant, and the assembly bench worker jobs contained in the ALJ's hypothetical, would require repetitive bending, stooping, or twisting, Dr. Magrowski testified such jobs would require the individual to occasionally bend, stoop, or twist.  (Tr. 266-67).  With respect to breaks, Dr. Magrowski testified that the worker would have the typical fifteen-minute break in the morning, break for lunch lasting thirty minutes, and a fifteen-minute break in the afternoon.  (Tr. 267).  Dr. Magrowski testified that if a worker required a longer break time in the morning and the afternoon of thirty minutes due to medication or the side effects from medication, a worker would not be able to maintain those jobs.  The three jobs would require the worker to be able to sustain attention.  (Tr. 267).  Dr. Magrowski agreed that if a worker was having trouble concentrating or maintaining proper focus due to medication, such worker would not be able to work any of the three jobs.  With respect to the sit/stand requirement of the jobs, Dr. Magrowski testified that a worker would have to be able to sit 20 to 30 minutes at a time.  Dr. Magrowski opined that the option of lying down would probably be a special accommodation.  (Tr. 268).

### 3.  Forms Completed by Claimant

In the Function Report-Adult completed on August 21, 2005, Claimant reported his daily activities to include reading the newspaper, eating breakfast, taking his medications, taking a nap, picking his daughter up from babysitter next door, eating dinner, watching the news, socializing with the neighbors, and helping bathe his daughter.  (Tr. 85).  Claimant indicated that he can drive a car.  (Tr. 88).  Claimant listed fishing in their pond every other weekend, boating, and watching television as his interests.  (Tr. 89).

In the Adult Disability Report, Claimant reported becoming unable to work because of his back injury since May 17, 2005. (Tr. 101-02).

## III. Medical Records

On July 12, 2004, Claimant returned to Dr. Stephen Knapp, a D.O., for a check up. (Tr. 149). Examination showed a normal inspection of Claimant's back. (Tr. 150).

On January 19, 2005, Claimant reported severe lower back pain during an office visit. (Tr. 141). Dr. Knapp prescribed medications as treatment and scheduled Claimant to return in three months. (Tr. 142). On January 31, 2005, Claimant called Dr. Knapp's office complaining of leg and back pain and requesting pain medication be prescribed. (Tr. 138). Dr. Knapp prescribed Ultram. On February 14, 2005, Claimant's wife called Dr. Knapp's office and reported over-the-counter cold medicines were not working, and Dr. Knapp prescribed a medication. (Tr. 138).

On May 18, 2005, the attending physician in the emergency room at St. Anthony's Medical Center treated Claimant for a low back strain caused by an accident at work the day before. (Tr. 185-93). Claimant reported low back pain with numbness radiating into his right lower leg. Examination revealed subjective tenderness of the spinous processes of the lumbar spine but were otherwise generally unremarkable. The attending doctor diagnosed Claimant with low back strain and prescribed pain medication. (Tr. 185-93).

On May 20, 2005, Claimant returned to Dr. Knapp's office reporting neck and back pain after an accident at work. (Tr. 136). Examination revealed pain and a decreased range of motion in his neck. (Tr. 136). Examination of his back showed limited range of motion of cervical and lumbar spine and tenderness and muscle spasms in his back. (Tr. 137). Dr. Knapp initially

diagnosed Claimant with cervical and lumbar sprain and lumbar degenerative joint disease and ordered a MRI. (Tr. 137). The MRI of the lumbar spine degenerative changes L3-4 associated with focal lateralization of the disc to the left resulting in moderate dural space narrowing. (Tr. 180). The MRI of the cervical spine showed minimal disc changes and no significant abnormality. (Tr. 182). The MRI of the lumbar spine series with five view exam showed post-surgical changes of posterior spinal fusion from L4 through S1 and mild spondylotic change from L2 through L4.

In a follow-up visit on May 27, 2005, Claimant reported continued back pain and difficulty moving. (Tr. 134). Examination showed a decreased range of motion in his neck and tenderness and decreased range of motion in his back. (Tr. 134-35). Dr. Knapp diagnosed Claimant with cervical disc disease and sprain, cervical degenerative joint disease, a lumbar sprain, lumbar degenerative joint disease, and lumbar stenosis, and ordered physical therapy and prescribed Valium and Percocet. (Tr. 135).

During an office visit on June 10, 2005, Claimant reported being slightly improved but still having pain in thoracic and lumbar spine. (Tr. 132). Dr. Knapp continued his medication regime and physical therapy. (Tr. 133). On June 6 and 19, 2005, Dr. Knapp refilled Claimant's Oxycodone prescriptions. (Tr. 138).

On June 14, 2005, Dr. Patricia Hurford, an orthopedic specialist at Saint Louis Spine Care Alliance, evaluated Claimant's back and neck pain. (Tr. 166). Claimant reported being hit by a chassis on May 17, 2005, while driving a ramper at work. Claimant reported prior surgeries to the lumbar spine in 1995, 1999, and 2001, with status post fusion, and residual numbness in the right leg from the surgeries. Claimant's pain is aggravated during exercise, sitting, standing, twisting, cold weather, bending forward, coughing, and working. Walking provides relief to his

pain. Claimant has been participating in physical therapy and the therapy has been moderately

helpful. (Tr. 166). Claimant's current medications include OxyCodone, Diazepam, Diclofenac,

Hyzaar, and Lipitor. (Tr. 167). Examination revealed no paravertebral spasm or trigger points

and tenderness around the incisional scar in the lumbar spine. (Tr. 168). Dr. Hurford's report of

the examination included her observation that Claimant did not appear to be in apparent distress

during the examination. Lumbar spine flexion noted to be 50 to 60%, extension 10%, and side-

bending 20%. Cervical range of motion demonstrates marked limitation of right rotation and

extension moderately restricted to 40%. (Tr. 168). Dr. Hurford noted significant pain with

palpation and compression of the SI joint and with Patrick's maneuver. (Tr. 169). The diagnostic

studies showed juxtafusional stenosis at L3-4 and status post laminotmy. posterior fusion at L4-5

and L5-S1 and minimal posterolateral disc protrusion at L3-4. (Tr. 169). The lumbosacral x-rays

dated January 21, 2005, showed post-surgical changes of posterior spinal fusion from L4 through

S1 and mild spondylotic change from L2 through L4. (Tr. 170). Dr. Hurford noted that

Claimant's physical therapy notes show Claimant has limitations in extension and flexion of the

lumbosacral spine and pain. Dr. Hurford reviewed Claimant's job description. Dr. Hurford found

Claimant to have cervical strain, pre-existing degenerative disc changes, no evidence of

radiculopathy or myelopathy from cervical injury, sub-acute mechanical back pain with SI joint

symptoms, juxtafusional stenosis, and left lower extremity radicular symptoms. (Tr. 170). Dr.

Hurford recommended that Claimant continue physical therapy with emphasis placed on

management of his SI dysfunction and more aggressive restoration of normal and functional range

of motion and use of Medrol Dose-Pak for inflammation. (Tr. 171). Dr. Hurford reviewed

Claimant's work activities and determined that he should avoid operating any heavy equipment

and change positions every thirty minutes and restricted to sedentary work activities only. Dr. Hurford opined that she would consider aggressive injection procedures to relieve pain symptoms. (Tr. 171). In the Office Visit Report, Dr. Hurford determined that Claimant could return to regular work with the following restrictions: changing position from sitting to standing to walking every thirty minutes, sedentary light duty work, and no operating heavy equipment. (Tr. 173).

In a follow-up visit on June 22, 2005, Claimant reported increased symptoms with headaches after a 140-mile round trip visit to relatives. (Tr. 162). Claimant reported no improvement with land based physical therapy and significant limitations in range of motion. Claimant's medications include Hydrocodone and Valium. Claimant rated his lower back pain as a seven out of ten and reported marked limitation of lumbosacral range of motion. (Tr. 162). Dr. Hurford found Claimant to have pain, cervical spine degenerative disc disease with myofascial symptoms in the cervicus spinails. As treatment, Dr. Hurford recommended trigger point injections to the cervical region, Ibuprofen 800 mg, Hydrocodone, schedule for bilateral SIJ injections, and start aquatic based physical therapy program. (Tr. 163). Dr. Hurford administered a trigger point injection to address Claimant's cervical spine myofascial pain syndrome. (Tr. 164). In the Office Visit Report, Dr. Hurford noted that Claimant can return to regular work with the following restrictions: changing position from sitting to standing to walking every thirty minutes, sedentary light duty work, and no use of heavy equipment. (Tr. 165). On June 30, 2005, Dr. Hurford administered a sacroiliac joint injection as treatment of Claimant's status post lumbosacral fusion with bilateral sacroiliac joint pain. (Tr. 161).

In follow-up treatment on July 13, 2005, Claimant reported no significant overall change in his condition after starting aquatic fitness physical therapy. (Tr. 156). Claimant reported that

the trigger point injections in his neck have restored normal motion and decreased the pain. His only complaint was pain at the base of the skull at the cranial cervical junction, particularly with extension. Claimant reported the bilateral SI injections had resolved the pain to both lower extremities but now has numbness tight feeling in both legs and uses one Vicodin a day to relieve the pain. Examination showed limited cervical extension, diminished lumbar range of motion in flexion and extension, and tenderness at the lumbosacral level to the SI joints, bilaterally. (Tr. 156). Dr. Hurford found Claimant to have mechanical low back pain with increased significant symptoms in the lumbar spine with some improvement after the SI injections but low back pain persists. (Tr. 157). Dr. Hurford further found Claimant to have cervical strain injury with myofascial symptoms but improvement after trigger point injections, and no evidence of radiculopathy and myelpathy. As treatment for the cervical spine and the lumbar paravertebrals, Dr. Hurford recommended trigger point injections. Dr. Hurford noted a concern with Claimant's abilities to return to prior work levels given the concomitant degenerative changes above his fusion and his current level of pain. Dr. Hurford determined Claimant had not made significant progress in physical therapy to warrant continuation. In follow-up treatment, Dr. Hurford would assess Claimant's response to trigger point injections and determine whether a functional capacity evaluation is indicated as an objective measure for work abilities or whether Claimant could return to work duties at that time. (Tr. 157). Dr. Hurford administered a trigger point injection to alleviate Claimant's low back pain and cervical myofascial pain syndrome after a strain. (Tr. 159). In the Office Visit Report, Dr. Hurford noted that Claimant can return to regular work with the following restrictions: changing position from sitting to standing to walking every thirty to forty-five minutes, sedentary light duty work, and no use of heavy equipment. (Tr. 160).

Claimant reported his pain improved following the trigger point injections during follow-up treatment with Dr. Hurford. (Tr. 153). Claimant reported continued difficulty with increasing pain across the lower back especially with ambulation but improvement of the pain with Vicodin. Claimant reported that he wanted to avoid any surgical treatment if at all possible. Examination showed marked limitation of lumbosacral flexion and extension, pain over SI joints, and some myofascial symptoms with trigger points. Dr. Hurford diagnosed Claimant with mechanical low back, status post strain and cervical myofascial symptoms after strain injury. (Tr. 153). Dr. Hurford opined that Claimant has no indications for surgical treatment given the control of his pain symptoms and lack of evidence of radiculopathy or myelopathy. (Tr. 154). Dr. Hurford recommended the permanent restrictions of no lifting, or pushing/pulling greater than forty pounds; and no repetitive bending, stooping, or twisting. Dr. Hurford refilled his Vicodin prescription and recommended that Claimant continue a range of motion activities to the cervical region and apply heat and cold modalities at home and maintain a general exercise program. On July 26, 2005, Dr. Hurford discharged Claimant from treatment finding that Claimant had achieved maximum medical improvement with the permanent restrictions as outlined. (Tr. 154).

On July 27, 2005, Claimant reported to Dr. Knapp that Worker's Compensation advised him not to return to work and the doctor prescribed Vicodin and Ibuprofen. (Tr. 130). Dr. Knapp diagnosed Claimant with sciatica and radiculopathy and advised Claimant to apply for disability.[4] (Tr. 131).

---

[4] "A medical source opinion that an applicant is 'disabled' or 'unable to work' ... involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005), citing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

In an office visit on May 31, 2006, Claimant reported his back and neck being sore and stiff and being depressed. (Tr. 127). Examination revealed tenderness and decreased range of motion of his back. (Tr. 126). Dr. Knapp diagnosed Claimant with depression and prescribed Prozac and muscle relaxers. (Tr. 126). On July 7, 2006, Claimant reported severe lower back pain for the last three weeks while out of town. (Tr. 125). Dr. Knapp prescribed Flexeril and other medications and ordered Claimant to apply ice and heat. (Tr. 124). In a return visit on July 21, 2006, Claimant reported trouble walking, standing up and sitting down, and constant pain in his lower back and both legs. (Tr. 123). Dr. Knapp diagnosed Claimant with lumbar disc disease, degenerative joint disease, and failed back syndrome and prescribed Vicodin. (Tr. 122).

In a follow-up visit on August 21, 2006, Claimant reported low back pain and depression. (Tr.121). Dr. Knapp diagnosed Claimant with lumbar sprain, lumbar degenerative joint disease, and depression. (Tr. 120). Dr. Knapp counseled Claimant to stop smoking and diet and exercise. (Tr. 120). On September 25, 2006, Claimant reported continued back pain and depression. (Tr. 117). Dr. Knapp diagnosed Claimant with lumbar disc disease, degenerative joint disease, and failed back syndrome. (Tr. 116). Dr. Knapp changed Claimant's antidepressant to Lexapro. (Tr. 116).

On October 23, 2006, Claimant complained of low back pain and depression during follow-up treatment with Dr. Knapp. (Tr. 114). Dr. Knapp prescribed Prozac and diagnosed Claimant with depression, lumbar disc disease, and lumbar degenerative joint disease. (Tr. 113).

In the Physical Residual Functional Capacity Assessment completed on October 25, 2005, Dr. Anver Tayob, an orthopedist, listed post strain, post L4-S1 fusion as Claimant's primary diagnosis. (Tr. 74-81). Dr. Tayob determined that Claimant can occasionally lift twenty pounds,

frequently lift ten pounds, and stand and sit about six hours in an eight-hour workday. (Tr. 75).

Dr. Tayob noted that Claimant has unlimited capacity to push and/or pull. (Tr. 75). Based on

Claimant's medical records, Dr. Tayob noted that his doctors recommended permanent

restrictions. (Tr. 76). With respect to postural limitations, Dr. Tayob indicated that Claimant can

occasionally climb ladder/rope/scaffolds, kneel, and crouch, and frequently climb ramps/stairs,

balance, and crawl. (Tr. 76). Dr. Tayob noted that Claimant has no established manipulative,

visual, or communicative limitations. (Tr. 77-78). Dr. Tayob determined that Claimant's has

unlimited environmental limitations except he should avoid concentrated exposure to hazards such

as machinery and heights. (Tr. 78). A treating source statement regarding Claimant's physical

capacities was in the file, and Dr. Tayob noted that the treating source findings about Claimant's

limitations or restrictions were not significantly different from his findings. (Tr. 80).        In the

Explanation of Determination, a counselor for Disability Determinations, opined as follows:

> 49 year old DI clmt who alleges a back injury. Clmt reports that he was injured at
> work 5/07/05. The MER is file does establish a MDIs of at Lumbar Strain, post
> L4-S1 fusion. The Clmt has reached MMI, with full ROM in his upper/lower
> extremities, with some restrictions.
>
> The clmt is not currently engaging in SGA. The clmt does have a established MDI
> that does not meet or equal a listing, however; is more than non-severe. The
> current PRFC is limited to a range of light work. The clmt past relevant work has
> been as a crane operator (921.663-022, SVP 4, Medium). This clmt does not
> retain the physical capacity to perform his past relevant work. The clmt is a
> younger individual, high school graduate, semi-skilled work. Using the medical
> vocational rule 202.19 as a guide, the clmt is considered not disabled. The clmt
> does retain the physical capacity to perform other light work. Jobs, the clmt can
> perform are: monrail crane operator (921-663-042, SVP 3, Light); winding-
> machine operator (619.665-010, SVP 2, Light) and wet plant operator (619.665-
> 010, SVP, Light).
>
> Based on the overall MER in file, this claim for disability is being denied.

(Tr. 65).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the disability insured status requirements on May 17, 2005, through December 31, 2010.  (Tr. 17).  Claimant has not engaged in substantial gainful activity since May 17, 2005,  the date Claimant alleges he became unable to work.  The ALJ found that the medical evidence establishes that Claimant has the severe impairments of degenerative disc disease and status post fusion surgery, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  The ALJ found that Claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence and the record as a whole and are not fully credible.  (Tr. 17).  The ALJ found that Claimant has the residual functional capacity to perform work that involves lifting and/or carrying up to twenty pounds occasionally, ten pounds frequently; and sitting, standing and/or walking with usual breaks for about six hours in an eight hour work day.  (Tr. 18).  Claimant should avoid concentrated exposure to hazards and could occasionally climb, stoop, and crouch.  The ALJ noted that Claimant is a person closely approaching advanced age, and has completed at least a high school education.  The ALJ determined that Claimant is unable to perform his past relevant work because his past relevant work required the performance of work-related activities precluded by the limitations set forth in the RFC.  The ALJ found Claimant able to make a vocational adjustment to work which exists in significant number in the national economy.  (Tr. 18).

Based on Claimant's residual functional capacity, his age, education, and work experience, the ALJ opined that Claimant is not disabled.  (Tr. 18).  The ALJ noted that there are jobs that

exist in significant numbers in the national economy that a hypothetical individual with Claimant's residual functional capacity could perform. The ALJ found Claimant is not under a disability. (Tr. 18).

## V.  Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine

whether the impairment meets or is equal to one determined by the Commissioner to be

conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment,

the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is

not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the

claimant is capable of doing past relevant work. If the claimant can still perform past work, she is

not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ

proceeds to step five in which the ALJ determines whether the claimant is capable of performing

other work in the national economy. In step five, the ALJ must consider the claimant's "age,

education, and past work experience." Only if a claimant is found incapable of performing other

work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); <u>see also</u>

<u>Bowen</u>, 482 U.S. at 140-41 (explaining five-step process).

 Court review of an ALJ's disability determination is narrow; the ALJ's findings will be

affirmed if they are supported by "substantial evidence on the record as a whole." <u>Pearsall</u>, 274

F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision." <u>Id.</u> The court's review

"is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision." <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will

affirm the Commissioner's decision as long as there is substantial evidence in the record to

support his findings, regardless of whether substantial evidence exists to support a different

conclusion. <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The claimant's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The claimant's subjective complaints relating to
      exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the
      claimant's impairments.

6.    The testimony of vocational experts when required which
      is based upon a proper hypothetical question which sets forth the claimant's
      impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

In his application for disability benefits, Claimant alleged disability due to his back injury. The ALJ found Claimant has severe impairments of degenerative disc disease and status post fusion surgery and concluded that the impairments, alone or in combination, are not of listing level. A review of Claimant's application shows that Claimant failed to allege depression as a basis for disability. Claimant did not testify at the hearing that his depression affects his ability to function, and the ALJ fulfilled his duty of investigating this claim not presented in the application for benefits but for the first time raised by Claimant in his brief. The undersigned concludes that the ALJ did not err in discounting the diagnosis of depression/anxiety. *See* Kirby v. Astrue, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities; claimant bears the burden

of establishing impairment's severity). The ALJ noted in his decision as follows: In terms of emotional/mental findings, the claimant was varyingly described as having presented with a depressed mood. No other adverse mental status findings were noted. (Tr. 15) The ALJ opined as follows:

> the record fails to evidence that the claimant's emotional/mental impairment would impose more than minimal effect on his ability to perform work related activities and would, accordingly, be non-severe. In so finding, consideration is provided to the relative lack of clinically significant findings on examination. Consideration is also given the limited record of treatment sought.

(Tr. 15). The ALJ found Claimant to have mental limitations including mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no incidents of decompensation of extended duration. (Tr. 15).

The Court finds no support anywhere in the record for Claimant's contention that the ALJ erred in failing to consider his depression as a severe impairment, and to determine its effect on his limitations. First, Claimant never alleged that his depression was disabling, and he presented no medical evidence substantiating such claim. Claimant never alleged any limitation in function as a result of his depression in his application for benefits or during the hearing. Indeed, the medical record is devoid of any support. The record not only fails to contain substantial evidence to support such a claim, it contains virtually no evidence to support Claimant's argument. The ALJ is under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) (quoting Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993)). Accordingly, this claim is without merit.

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess Claimant's credibility regarding his subjective complaints of constant pain. Further Claimant contends that the ALJ erred in properly formulating his RFC.

A.    Credibility Determination

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must also consider all of the evidence relating to the Claimant's prior work history, the absence of objective medical evidence to support the complaints, and third party observations as to:

1.    claimant's daily activities;

2.    duration, frequency and intensity of the pain;

3.    precipitating and aggravating factors;

4.    dosage, effectiveness and side effects of medication;

5.    functional restrictions.

Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (stating factors from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

The undersigned recognizes that pain itself may be disabling. See Loving v. Department of Health & Human Servs., 16 F.3d 967, 970 (8th Cir. 1994). However, "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Jones, 86 F.3d at 826. "[T]he real issue is how severe the pain is." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)). While there is no doubt that claimant experiences pain, the more important question is how severe the pain is. Gowell, 242 F.3d at 796.

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966). The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966. The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons. See Goff

v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of ongoing medical evidence corroborating Claimant's subjective complaints of functional limitations, the gap in medical treatment, and the testimony adduced at the hearing. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not fully credible.[5]

Specifically, the ALJ noted that no treating physician stated that Claimant was

---

[5]The undersigned notes that although Claimant testified at the hearing that he has to recline in an easy chair for a couple of hours each day to relieve his pain and his counsel included the need to lie down in his hypothetical, there is no objective medical evidence substantiating Claimant's need to recline for a couple of hours each day. See Harris v. Barnhart, 356 F.3d 936, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition required claimant to lie down for hours each day).

disabled or unable to work during the relevant time period. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). Further, the ALJ noted that despite his allegations of persistent pain, Claimant did not receive ongoing medical attention or treatment for his pain. Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."); See Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997) (determining that failing to seek treatment was inconsistent with claimant's subjective complaints of disabling pain); Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993) (lack of ongoing treatment is inconsistent with complaints of disabling condition). The ALJ noted how the record established that Claimant failed to pursue medical treatment from August, 2005, through April, 2006.[6] Likewise, the

_____

[6]The record establishes that Claimant submitted Dr. Knapp's treatment notes for the time period in question for the first time to the Appeals Council with his request for review. (Tr. 1A, 2-5, 194-206).

medical evidence is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment although Claimant testified otherwise at the hearing.  See Id.; Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility).  Further, the ALJ noted how Claimant is able to engage in household chores and activities.  Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence.").  The ALJ opined these to be inconsistent with a finding of disability.  See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on a daily basis, drive car infrequently, and go grocery shopping occasionally).  These observations are supported by substantial evidence on the record as a whole.

Moreover, the relevant evidence the Appeals Council made part of the record after the hearing does little to challenge the ALJ's credibility determination.  "In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council."  Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000); Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994) ("[The court] must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing.").

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled.  Instead, the ALJ considered all the evidence relating to Claimant's subjective

complaints, including the various factors as required by Polaski, and determined Claimant's

allegations not to be fully credible. Although the ALJ did not explicitly discuss each Polaski

factor in making his credibility determination, a reading of the decision in its entirety shows the

ALJ to have acknowledged and considered the factors before discounting Claimant's subjective

complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ

expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a

whole, and the ALJ's determination is supported by substantial evidence, such determination

should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).

Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not

entirely credible, the undersigned defers to the ALJ's credibility findings. See Leckenby v.

Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination

when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d

798, 801(8th Cir. 2005).

   The undersigned finds that the ALJ considered Claimant's subjective complaints on the

basis of the entire record before him and set out the inconsistencies detracting from Claimant's

credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the

record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out

inconsistencies in the record that tended to militate against the Claimant's credibility. See

Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is

supported by good reasons and substantial evidence). Those included Claimant's lack of ongoing

medical treatment, his daily activities, lack of objective medical evidence, and the hearing

testimony. The ALJ's credibility determination is supported by substantial evidence on the record

as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006);  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

B.    Residual Functional Capacity

Claimant contends that the ALJ erred by disregarding the opinion of Dr. Hurford and failing to consider medical evidence in his records favorable to Claimant. See 20 C.F.R. § 404.1527(d)(2) (2005) (requiring the Commissioner to give controlling weight to the opinion of a treating physician if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence"); Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003).

With regard to the ALJ's determination of Claimant's RFC, the undersigned finds that the ALJ properly assessed the medical evidence and Claimant's credibility.  "The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004).  It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v.

Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).  "In analyzing the evidence, it is necessary to draw

meaningful inferences and allow reasonable conclusions about the individuals's strengths and

weaknesses."  SSR 85-16.  SSR 85-16 further delineates that "consideration should be given to ...

the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to

others *over a period of time*" and that the "frequency, appropriateness, and independence of the

activities must also be considered."  SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the

credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function.

See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is

primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218.  In making a credibility

determination, an ALJ may discount subjective complaints if they are inconsistent with the record

as a whole.  Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a

claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v.

Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  In Polaski, the Eighth Circuit set out factors for

an ALJ to consider when determining the credibility of a claimant's subjective complaints.  The

ALJ must make express credibility determinations detailing the inconsistencies in the record that

support the discrediting of the claimant's subjective complaints.  Singh v. Apfel, 222 F.3d 448,

452 (8th Cir. 2000).  "An ALJ must do more than rely on the mere invocation of Polaski to insure

safe passage for his or her decision through the course of appellate review."  Harris v. Shalala, 45

F.3d 1190. 1193 (8th Cir. 1995).  However, the Eighth Circuit has held that an ALJ is not

required to discuss each Polaski factor methodically.  The ALJ's analysis will be accepted as long

as the opinion reflects acknowledgment and consideration of the factors before discounting the

claimant's subjective complaints.  Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC.  See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record.").

The undersigned finds Claimant's argument flawed inasmuch as the instant medical record does not support his claim of disability.  The medical record is devoid of any physician finding Claimant disabled.  In assessing the RFC, the ALJ evaluated Dr. Hurford's findings and working restrictions and assessed Claimant's ability to work more conservatively than Dr. Hurford.  At the time of discharge from her medical treatment, Dr. Hurford recommended the permanent restrictions of no lifting, or pushing/pulling greater than forty pounds; and no repetitive bending, stooping, or twisting.  In comparison, the ALJ determined that Claimant could lift and/or carry only twenty pounds regularly and ten pounds frequently.  Moreover, the ALJ adopted part of Dr. Hurford's functional assessment by determining that Claimant could only occasionally stoop. Indeed, Dr. Hurford opined that Claimant has no indications for surgical treatment given the control of his pain symptoms and lack of evidence of radiculopathy or myelopathy.  Likewise, both Dr. Hurford and the ALJ determined Claimant could not return to his past work.  As noted by the ALJ, the objective medical evidence does not support Claimant's alleged functional limitations.  The ALJ gave good reasons for his determinations, and such reasons are supported by substantial evidence on the record as a whole.  Thus, the substantial evidence on the whole record supports the ALJ's findings.

The ALJ's determination of Claimant's RFC is supported by substantial evidence in the record. Likewise, the ALJ noted several inconsistencies within the record, Claimant's testimony, and he pointed out the lack of supporting objective medical evidence. The ALJ opined that the medical record does not show that any physician found Claimant to be totally disabled. The ALJ listed facts from Claimant's hearing testimony regarding the <u>Polaski</u> factors and the medical record that reflected upon Claimant's ability to perform work such as his daily activities. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. <u>See</u> <u>Samons v. Astrue</u>, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled, and his failure to seek regular and sustained treatment. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform work. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform work. Thus, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant could lift and/or carry twenty pounds occasionally, ten pounds frequently; sit, stand and/or walk with usual breaks for about six hour in an eight hour workday, and occasionally climb, stoop, and crouch. The ALJ thus concluded that Claimant would not be able to meet the demands of his past relevant work but would be able to perform a variety of jobs

including the job of a parking lot attendant, arcade attendant, and assembly worker.

The substantial evidence on the record as a whole supports the ALJ's decision. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

3.    Post-Hearing Medical Records

The undersigned finds that the additional medical records including Dr. Knapp's records from September 2, 2005, to January 3, 2007, submitted by Claimant after the hearing do not alter the outcome of this opinion. (Tr. 194-241). Indeed, the undersigned notes that these records were part of the record before the Appeals Council prior to the Appeals Council finding no basis for changing the ALJ's decision and denying claimant's request for review of the ALJ's decision. (Tr. 2-5). Thus, the undersigned finds that the treatment notes add nothing new to the record regarding Claimant's back pain and alleged disability.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that Claimant's complaint be dismissed with prejudice.

The parties are advised that they have eleven days in which to file written objections to this Report and Recommendation.  Failure to timely file objections may result in waiver of the right to appeal the questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __11th__ day of September, 2008.

_____/s/ Terry I. Adelman_____<br>
UNITED STATES MAGISTRATE JUDGE